# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

In the Interest of Christopher H., a Juvenile under the age of Seventeen, Appellant.

Appellate Case No. 2017-001257

———————————

Appeal From Richland County
W. Greg Seigler, Family Court Judge

———————————

Opinion No. 5797
Submitted November 2, 2020 – Filed February 3, 2021

———————————

**REVERSED**

———————————

Appellate Defender Taylor Davis Gilliam, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Senior Assistant Deputy Attorney General Deborah R.J. Shupe, both of Columbia; and Solicitor Samuel R. Hubbard, III, of Lexington, all for Respondent.

———————————

**THOMAS, J.:** Christopher H. appeals a sentencing court's order requiring him to register as a sex offender on the private sex offender registry. On appeal, he argues the sentencing court erred by finding good cause existed to place him on the private sex offender registry because there was insufficient evidence showing he was at risk of reoffending. We reverse.

**FACTS**

On December 11, 2014, the State filed a juvenile petition alleging Christopher committed two counts of first-degree criminal sexual conduct (CSC) and two counts of second-degree assault and battery against his six-year-old female cousin and her nine-year-old female friend. Christopher was between twelve and thirteen years old at the time of the offenses. Christopher pled guilty to two counts of second-degree assault and battery, and the State dropped the two counts of first-degree CSC. The plea court accepted the plea and ordered Christopher to undergo a secure evaluation at Midlands Evaluation Center (MEC), including a sex offender risk assessment and a psychiatric evaluation, with a dispositional hearing to follow. Following his evaluation, the sentencing court committed Christopher to the Department of Juvenile Justice (DJJ) for an indeterminate sentence not to exceed his twenty-first birthday, suspended upon alternative placement at Generations, an inpatient sex offender treatment facility, and two years of probation. Christopher was discharged from Generations and released to his parents' custody on July 22, 2016, after approximately sixteen months of inpatient sex offender treatment.

On March 29, 2017, the family court held a sentencing hearing to determine whether to place Christopher on the private sex offender registry. The State called Adam Whitsett, general counsel for the State Law Enforcement Division, as its only witness. He testified to the law regarding the public and private sex offender registry and stated Christopher's guilty plea to two counts of second-degree assault and battery would not qualify him for placement on the public registry. Whitsett testified placement on the private registry would prohibit Christopher from living on campus while he attended college. Whitsett also testified an order to register as a sex offender creates a lifetime requirement to register. The State relied on its brief and supporting documentation, which consisted of Christopher's records.

Generations noted the following post-treatment recommendations on Christopher's discharge report: (1) no unsupervised access to children under thirteen years old; (2) no access to internet without parental controls installed; (3) monitoring of text messages and other communications with peers; (4) consistent access to outpatient therapy; (5) no access to electronics in his room at night; (6) consistent monitoring of his medications by a physician; (7) no contact with the victims or their families; (8) accountability for school work; (9) adult supervision in the community and at home until age eighteen; and (10) attendance at monthly meetings with his probation officer until released. Meredith Lutz, Christopher's therapist at Generations, testified Christopher successfully completed all four levels of treatment. Lutz explained the restrictions regarding access to children and adult supervision at home and in the community as recommendations placed on every

resident's discharge care plan. She explained the restrictions were not personalized toward Christopher. Lutz declined to give her personal recommendation regarding the sex offender registry, stating she does not recommend for or against placement on the registry for any of her patients. However, she explained Generations' view of the sex offender registry aligned with studies indicating placement on the registry does not reduce the rate of recidivism or otherwise provide safety to the community. Lutz concluded Christopher's risk of reoffending decreased because he completed treatment.

Dr. McKee, qualified and testifying as an expert in forensic psychology, testified he conducted a forensic psychological assessment of Christopher. He explained he assessed Christopher's risk of reoffending using four different sexual recidivism risk scales for juveniles widely used by clinicians. Dr. McKee testified the results from each assessment indicated Christopher had a low risk of reoffending and his prognosis was "good, even perhaps excellent." He added, "There are no psychological tests, no risk guides, no set of research that can ever say somebody will not reoffend. . . . [Y]ou never get to [zero] . . . . You just try to get as close as you can to [zero]." Dr. McKee testified the question was the degree of risk, not the existence of risk. He concluded "there [was no] empirical basis for placing Christopher on the sex offender registry."

Melanie Hendricks, qualified as an expert in social work as it relates to adolescent care, testified she supervised Christopher's outpatient therapist, Sara Hood. According to Hendricks, research indicates placement on the registry creates unintended negative consequences for juvenile offenders, such as difficulty being accepted to college, the inability to live in on-campus housing or participate in ROTC or the military, and an increased risk of alcohol and drug abuse and suicide. Hendricks testified there was no research indicating placement on the sex offender registry reduced the recidivism rate. She asserted Christopher should not be placed on the sex offender registry because his family was involved in and cooperated with his treatment, which increased his likelihood of success. She concluded she "would not deem [Christopher] to be appropriate for lifetime monitoring, whether public or private."

Finally, Sara Hood testified she was Christopher's outpatient therapist. Hood explained Christopher was definitely making good progress: he had a job at Sonic, attended school every day and was doing well in school, had not had any behavior problems at school, was playing the cello in Orchestra, and was in ROTC. She explained Christopher's family was involved in his therapy, contacted her with concerns and questions, and attended therapy sessions with Christopher. When

asked if she believed Christopher was at a risk of reoffending, Hood answered, "I look for . . . red flag issue[s during his sessions] and there hasn't been anything like that. . . . I haven't seen anything there that's raised any real concern to me." She also stated she did not recommend that Christopher be placed on the sex offender registry because of his "low risk [of reoffending]."

The sentencing court found good cause existed to place Christopher on the private sex offender registry because there was evidence showing Christopher was at risk of reoffending. Christopher filed a motion to reconsider, which was denied. This appeal followed.

**LAW/ANALYSIS**

Christopher argues the sentencing court erred by placing him on the private sex offender registry because the evidence in the record indicated he had only a low risk of reoffending, which was insufficient to establish good cause. We agree.

"A [sentencing court] has broad discretion in sentencing within statutory limits." *In re M.B.H.*, 387 S.C. 323, 326, 692 S.E.2d 541, 542 (2010). "A [sentencing court] must be permitted to consider any and all information that reasonably might bear on the proper sentence for a particular defendant." *Id.* The sentence imposed will not be overturned on appeal absent an abuse of discretion. *Id.* An abuse of discretion occurs when the sentence imposed was based on either an error of law or a factual conclusion not supported by evidence in the record. *Id.*

A sentencing court "may order as a condition of sentencing that the person be included in the sex offender registry if good cause is shown by the solicitor." S.C. Code Ann. § 23-3-430(D) (2007). In *M.B.H.*, our supreme court stated "good cause" for the purposes of placing a juvenile offender on the private sex offender registry "means only that the [sentencing court] must consider the facts and circumstances of the case to make the determination of whether or not the evidence indicates a risk to reoffend sexually." 387 S.C. at 327, 692 S.E.2d at 542.

In *M.B.H.*, as in this case, the solicitor introduced the evaluation center's report to support the request for M.B.H. to be placed on the private sex offender registry. *Id.* In *M.B.H.*, "the [sentencing court] enumerated the issues identified in the [c]enter's report that constitute good cause for requiring Appellant to register, including: multiple offenses; multiple younger, same-sex victims; a sense of victimization; denial of harm to others; borderline intellectual functioning; and the [c]enter's recommendation that Appellant receive inpatient sexual offender

treatment." *Id.* at 326, 692 S.E.2d at 542. Our supreme court found the sentencing court did not abuse its discretion by placing M.B.H. on the private registry because it "considered all the facts and circumstances of th[e] case, both aggravating and mitigating" and the evidence in the record supported the determination that M.B.H. was at risk of reoffending. *Id.* at 327, 692 S.E.2d at 542−43.

In this case, the State called one witness, who testified only regarding the law governing the registry and otherwise relied on Christopher's records. Unlike in *M.B.H.*, Christopher was doing well in school, had admitted his offenses, and had successfully completed his treatment. Christopher called four witnesses as fact or expert witnesses who either testified to his low risk to reoffend, that risk of reoffending can never be eliminated, or that Christopher should not be placed on the registry. Dr. McKee testified there is never no risk of reoffending and there was no basis to place Christopher on the registry. Here, there was other evidence indicating there was no cause to place Christopher on the registry. The sentencing court noted the testimony indicated Christopher was at a low risk of reoffending, but found "a" risk of reoffending existed; thus, good cause was established.

Our legislature explained the intent of the sexual registry statutes, stating, "[t]he intent of this article is to promote the state's fundamental right to provide for the public health, welfare, and safety of its citizens." S.C. Code Ann. § 23-3-400 (Supp. 2019). Our supreme court indicated, "[t]he intent of the legislature in enacting the sex offender registry law is to protect the public from those offenders who may re-offend." *In re Ronnie A.*, 355 S.C. 407, 409, 585 S.E.2d 311, 312 (2003). The requirement to register is considered non-punitive. *In Interest of Justin B.*, 419 S.C. 575, 583, 799 S.E.2d 675, 679 (2017).

However, placement of a juvenile convicted of a sexual offense on the registry is not automatic and requires the solicitor to show good cause. § 23-3-430(D). This requirement indicates an intent by the legislature to require more than a scintilla of evidence of risk. It is axiomatic that a juvenile with a history of a sexual offense or offenses will be at some risk, even if the risk is very low. As Dr. McKee testified, "[Y]ou never get to [zero risk]." If any risk is sufficient to establish good cause, the statute requiring the solicitor to show good cause would be of no purpose because all juveniles would automatically be placed on the registry. An appellate court "must presume the legislature did not intend a futile act, but rather intended its statutes to accomplish something." *Denene, Inc. v. City of Charleston*, 352 S.C. 208, 212, 574 S.E.2d 196, 198 (2002). We presume the legislature must have intended some juveniles would not be required to register. Otherwise, there would be no need for the legislative requirement for a showing of good cause.

The State's brief to the sentencing court states it "offered to withdraw its request to enter the juvenile's name on the private sex offender registry if the defense witnesses could provide affidavits indicating he is not at risk to reoffend. None of the witnesses . . . were willing to do that . . . ." Their willingness, however, was explained by their testimony, which indicated there can never be zero risk because to completely eliminate all risk is impossible. As previously stated, if our legislature intended this, it would not have placed the burden of proving good cause on the solicitor.

We find the weight of the evidence indicated the State failed to show good cause for placing Christopher on the registry. The only evidence of risk indicated a low risk, and the evidence overwhelmingly indicated registry in this case was not appropriate. Such a low risk of reoffending does not seem to meet the intent of the statute. Thus, we find the sentencing court abused its discretion in ordering Christopher placed on the registry. *M.B.H.*, 387 S.C. at 326, 692 S.E.2d at 542 (explaining the sentencing court abuses its discretion when the sentence imposed was "based on an error of law or a factual conclusion without evidentiary support").

**CONCLUSION**

Based on the foregoing, the order on appeal is

**REVERSED.**[1]

**HILL and HEWITT, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.